WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Mary Elizabeth Sam,<br><br>　　　　Defendant. | No. CR-16-00436-001-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Defendant Mary Elizabeth Sam's Motion to Suppress, (Doc. 45). For the reasons set forth below, the Court denies the motion.

**I.     Background**

On March 16, 2016, Agent Renteria of the United States Border Patrol ("USBP") stopped Defendant Mary Elizabeth Sam ("Sam") and her two children at a checkpoint at milepost 30 on Federal Route 15 ("the FR 15 checkpoint"). At the evidentiary hearing held on this motion, Agent Renteria testified that Sam was nervous, jittery, and reluctant to make direct eye contact with him. Due to Sam's demeanor, Agent Renteria asked Sam if he could search her trunk. Sam verbally agreed to Agent Renteria's request and unlocked the trunk. Upon opening the trunk, Agent Renteria observed an open box of laundry detergent with a strong odor. Alongside the laundry detergent was a large, heavy, sports bag. Agent Renteria asked Sam if he could inspect the bag. Sam said that he could, and upon opening the bag Agent Renteria found what he suspected to be two

large cellophane bales of marijuana. Sam was then placed in custody. The bundles tested positive for marijuana. Sam was charged with one count of Conspiracy to Possess with Intent to Distribute a Controlled Substance (Marijuana) and one count of Possession with the Intent to Distribute a Controlled Substance (Marijuana). *See* 21 U.S.C. §§ 84(a)(1), (b)(1)(D).

Sam asserts the marijuana taken from her vehicle should be excluded from evidence because it was obtained as the result of an unlawful search. (Doc. 45 at 1.) Sam argues that the FR 15 checkpoint is unconstitutionally operating as a general crime checkpoint instead of as a lawful immigration checkpoint, and the detention and questioning were longer than legally permitted. (*Id.*)

**II.  Legal Standard**

To overcome a defendant's motion to suppress, the government bears the burden of demonstrating the evidence was not the fruit of an unlawful search or seizure. *See United States v. Johnson*, 936 F.2d 1082, 1084 (1991) (citing *Mincey v. Arizona*, 437 U.S. 385, 390–91 (1978)).

**III.  Analysis**

The government has met its burden in demonstrating that the marijuana obtained from Sam's vehicle was the result of a lawful search. The search occurred at a lawful immigration checkpoint, Sam was not detained longer than necessary under the law, and Sam voluntarily consented to the search of her vehicle's trunk and bag.

**A.  The FR 15 checkpoint lawfully operates as an immigration control checkpoint.**

It is well established that immigration control is a valid primary purpose for briefly stopping cars without individualized suspicion at highway checkpoints near the border. The Supreme Court, undertaking the balancing of government and individual interests, has determined that "the flow of illegal aliens cannot be controlled effectively at the border" and there is only a limited intrusion on individuals' Fourth Amendment rights when they are briefly stopped for limited questioning at these checkpoints. *See United States v. Martinez-Fuerte*, 428 U.S. 543, 556–57 (1976).

Here, the government has demonstrated, and Sam does not contest, that the FR 15 checkpoint was designed with the primary purpose to detect and deter illegal immigration. The FR 15 checkpoint shares similar characteristics with the checkpoints upheld as constitutional in *Martinez-Fuerte*. The checkpoint is along a highway which feeds into two major routes to the international border, approximately 65 miles north of the border, in compliance with federal regulations. *See* 8 U.S.C. § 1357(a)(3) (stating checkpoints must be placed "within a reasonable distance" from the border); 8 C.F.R. § 287.1(a)(2) (defining a "reasonable distance" to be within 100 miles); *see also Martinez-Fuerte*, 428 U.S. at 556–57 (1976) (finding a legitimate governmental interest in placing permanent checkpoints on important highways leading away from the border, for "in their absence such highways would offer illegal aliens a quick and safe route into the interior").

There is an additional immigration reason justifying the placement of the checkpoint in the northern portion of the Tohono O'odham reservation. The Tohono O'odham reservation extends into Mexico, and members of the Tohono O'odham Nation live on both sides of the international border. Members of the Tohono O'odham Nation who are not United States citizens are allowed to be present upon reservation land in the United States but do not have permission to travel further into the United States. Thus, citizens of the Tohono O'odham Nation who are residents of Mexico are turned back at the checkpoint. The extent of the nation's reservation both south and well north of the border provides an additional immigration-related reason for the placement of the checkpoint in the northern portion of the Tohono O'odham Nation, even though it is somewhat distant from the border. Testimony at the suppression hearing indicated that Border Patrol wished to place the checkpoint even further north within reservation lands at least partly for this reason, but the present location was the one approved by the Tohono O'odham Nation.

Every car traveling northbound is briefly stopped at the FR 15 checkpoint and its occupants are asked about their citizenship. This is constitutionally permissible. *See*

*United States v. Preciado-Robes*, 964 F.2d 882, 884 (9th Cir. 1992) ("[A] stop is constitutional so long as the scope of the detention is limited to a few brief questions about immigration, the production of immigration documents, and a visual inspection of the vehicle . . . limited to what can be seen without a search." (internal quotations and citation omitted)); *see also Martinez-Fuerte*, 428 U.S. at 556–57 (finding the less discretionary nature of regularized stops of all motorists driving northbound reasonable, particularly since post-stop judicial review is available).

A border patrol officer may act appropriately upon information properly learned during a legitimate immigration checkpoint stop "even where such action may result in the arrest of a motorist for an offense unrelated to that purpose." *See City of Indianapolis v. Edmond*, 531 U.S. 32, 48 (2000). Brief detentions of vehicles at immigration checkpoints following an agent's limited questioning about motorists' citizenship are permitted if the government can demonstrate a minimal showing of suspicion. *See United States v. Taylor*, 934 F.2d 218, 221 (9th Cir. 1991). Minimal suspicion can be based on an officer's personal observations, informants' tips, and other facts known to the officer at the time. *See Adams v. Williams*, 407 U.S. 143, 147 (1972) (listing factors).

The government has demonstrated that Sam's detention was based on a minimal showing of suspicion. Agent Renteria testified that the questions he initially asked Sam were the questions he asks every driver who is stopped at the checkpoint. Even though Agent Renteria's brief questioning regarding citizenship revealed that Sam is a member of the Tohono O'odham Nation, Sam's suspicious demeanor justified further detention.[1] *See United States v. Wilson*, 7 F.3d 828, 834 (9th Cir. 1993) (noting driver's nervous behavior during limited question sufficient to establish minimal suspicion to justify

---

[1] The Defendant argues she should not have been stopped even for brief questioning because the FR 15 checkpoint is located within Tohono O'odham Nation, of which she is a member. Agents who recognize local inhabitants may wave them through the checkpoint without inquiry. *See Martinez-Fuerte*, 428 U.S. at 550. However, Agent Renteria testified that he did not recognize Sam, and even if he did believe that she appeared to be a member of the Tohono O'odham Nation that would not indicate that she was an American as opposed to a Mexican citizen of the Nation.

further detention); *see also Preciado-Robles*, 964 F.2d at 885 (holding motorist's suspicious demeanor provided a sufficient basis for brief detention even though motorist produced valid immigration documents). Agent Renteria stated that Sam appeared nervous, jittery, and reluctant to make direct eye contact. Agent Renteria further stated that Sam kept her eyes forward and her hands on the wheel for the entirety of their interaction. Based on these observations, Agent Renteria asked if Sam had anything in the trunk and if he could search it. (He further testified that illegal aliens can be smuggled in by their placement in the trunk). Sam responded she had a large bag with baseball equipment and told Agent Renteria he could search inside the trunk. Sam then unlocked the trunk herself. Upon opening the trunk Agent Renteria smelled a strong odor emanating from an open box of laundry detergent next to the large bag Sam described. Noticing that the shape and weight of the bag was inconsistent with sporting equipment, Agent Renteria requested permission to open the bag. Sam told Agent Renteria he could, and immediately upon opening the bag and finding what looked like marijuana, Agent Renteria called two other border patrol agents to transport her to the USBP station.

Sam asserts, however, that the primary purpose of the FR 15 checkpoint has shifted from that of interdicting illegal immigration to that of general crime control. Sam submits this shift is apparent when considering the checkpoint's arrest data from the six months before and after Sam's arrest. While these statistics reveal an overall higher number of narcotics-related arrests compared to immigration-related arrests, the statistics for the three years leading up to Sam's arrest demonstrate just the opposite.

Sam also argues that Agent Renteria's motivation for questioning Sam stemmed from his suspicions that Sam might be smuggling drugs. Agent Renteria submitted he had arrested a driver of a red sedan just ten minutes earlier who was found to be smuggling marijuana, that sometimes smugglers work in tandem to increase their odds of success in transporting aliens or drugs undetected, and both Sam and the driver of the red sedan arrived just after the agents had changed shifts. However, an agent's subjective

motivations are not indicative that the primary purpose of the checkpoint has shifted. *See United States v. Soto-Camacho*, 58 F.3d 408, 412 (9th Cir. 1995) (holding administrative search partly motivated by suspicion of drug smuggling reasonable where the search had an independent administrative justification and did not exceed the scope of that administrative justification) (citing *United States v. Watson*, 678 F.2d 765, 771 (9th Cir. 1982)). Therefore, regardless of any additional subjective motivations on the part of Agent Renteria, his brief questioning to ascertain Sam's citizenship demonstrates his actions were in furtherance of the USBP's primary purpose to detect and deter illegal immigration.

### B. Sam was lawfully detained at the FR 15 Checkpoint.

The government carries the burden of demonstrating that an individual's detention did not extend longer than necessary. *See United States v. Sharpe*, 470 U.S. 675, 685–86 (1985) (noting courts have declined to articulate a rigid time limitation, because doing so would undermine the need for authorities to respond to the particular demands of each situation). The inquiry requires considering whether the officer chose a means of investigation that was likely to quickly confirm or dispel their suspicions. *See id*. at 686 ("The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or pursue it.").

The duration of the stop lasted only a few minutes, which Sam does not contest. The Court finds that, in the absence of any contrary evidence, Agent Renteria did not extend the duration of the stop any longer than necessary to quickly confirm or dispel his suspicions.

### C. Sam voluntarily consented to the search of her trunk and bag.

A search conducted at a border patrol checkpoint must be justified by either probable cause or consent. *See Martinez-Fuerte*, 428 U.S. at 567; *see also Florida v. Harris*, 568 U.S. 237, 243 (2013) (noting probable cause to conduct a search existed when the totality of the facts suggest that contraband is present); *see also Preciado-Robles*, 964 F.2d at 885 (upholding narcotics seizure at immigration checkpoint where

motorist voluntarily consented to the search of her vehicle). Consent may be given verbally or inferred from an individual's actions. *See United States v. Chan-Jimenez*, 125 F.3d 1324, 1328 (9th Cir. 1997). The government carries the burden of proving that consent to search a vehicle was given voluntarily. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 248–49 (1973) (noting consent must be voluntarily given to be valid). The inquiry requires considering the totality of the circumstances. *See id*. at 234; *see also United States v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988) (noting courts consider whether the defendant was in custody, the agent had a gun drawn, *Miranda* warnings were given, the defendant was told she had the right to withhold consent, or the agent claimed a search warrant could be obtained if consent was not given).

Here, the government has demonstrated that Sam voluntarily consented to the search of her vehicle. Sam concedes that she verbally consented to Agent Renteria's requests to search the trunk and the sporting bag, and nonverbally consented by unlocking the trunk herself. Therefore, in the absence of any evidence that Sam was coerced into a search of her vehicle by threats, force, a stated or implied show of authority to obtain a warrant, or a custodial arrest prior to giving consent, the Court finds that Sam's consent was given voluntarily.

## CONCLUSION

Based on the foregoing authorities and reasoning, the Court finds the government has met its burden in demonstrating that the marijuana seized from Sam's vehicle was the result of a lawful search. The search was conducted at a lawful permanent immigration checkpoint, Sam was not detained longer than necessary to quickly confirm or dispel Agent Renteria's suspicions, and Sam voluntarily consented to the search of her vehicle's trunk and bag containing the marijuana.

/ / /

/ / /

/ / /

/ / /

**IT IS THEREFORE ORDERED** that the Defendant's Motion to Suppress (Doc. 45) is **DENIED.**

Dated this 2nd day of August, 2017.

_____
Honorable G. Murray Snow
United States District Judge